UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 22-CV-61883-RAR

**PREPARED FOOD PHOTOS, INC.,** *f/k/a*
Adlife Marketing & Communications Co., Inc.,

      Plaintiff,

v.

**PERRY WINGS PLUS, INC.,**

      Defendant.

_____/

### ORDER GRANTING MOTION FOR DEFAULT FINAL JUDGMENT

    **THIS CAUSE** is before the Court upon Plaintiff Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc.'s ("Plaintiff") Motion for Default Final Judgment ("Motion") [ECF No. 14], filed on December 8, 2022.  The Court has considered the Motion, has noted the Clerk's default against Defendant Perry Wings Plus, Inc., and is otherwise fully advised in the premises.  Pursuant to Rule 55 of the Federal Rules of Civil Procedure, the Court concludes that Plaintiff has met its burden for the entry of final default judgment as to Defendant.  Plaintiff has also met its burden of showing that it is entitled to permanent injunctive relief against Defendant as specified herein.  Accordingly, it is hereby

    **ORDERED AND ADJUDGED** that the Motion is **GRANTED** as set forth herein.

### BACKGROUND

    Plaintiff is in the business of licensing high-end, professional photographs for the food industry.  Plaintiff generally operates on a subscription basis whereby it charges its clients (generally, grocery stores, restaurant chains, food service companies, etc.) a minimum monthly fee of $999.00 for access to its library of professional photographs.  Compl. ¶ 8.  Plaintiff's standard

licensing terms require a minimum of a twelve month licensing commitment to avoid scenarios whereby a licensee pays for one month of access, downloads the entire library of 20,000+ photographs, and immediately terminates the license agreement.  Mot. at 2.  Plaintiff's business model relies on its recurring monthly subscription service to maintain its portfolio.  *Id.*

Plaintiff has numerous paying subscribers paying monthly subscription fees ranging from $999.00/month to $2,500.00/month (depending on the number of end users for which Plaintiff's photographs are to be used).  *Id.*  Generally stated, the bulk of Plaintiff's subscribers are professional ad agencies that develop weekly ads/grocery store websites for their own 'end users' (i.e., grocery stores, meat/dairy sellers, etc.).  *Id.* at 2–3.  Plaintiff owns each of the photographs available for license on its website and serves as the licensing agent with respect to licensing such photographs for limited use by Plaintiff's customers.  *Id.* at 3.  To that end, Plaintiff's standard terms include a limited, non-transferable license for use of any photograph by the customer only.  *Id.*  Plaintiff's license terms make clear that all copyright ownership remains with Plaintiff and that its customers are not permitted to transfer, assign, or sub-license any of Plaintiff's photographs to another person/entity.  *Id.*

This lawsuit concerns one (1) photograph titled "ChickenWingsHot004_ADL" ("Work") owned by Plaintiff for which Plaintiff serves as the licensing agent.  *Id.*  The Work is available for license on the above-stated terms.  *Id.*

The Work was registered by Plaintiff (pursuant to a work-for-hire agreement with the author that transferred all rights and title in the photograph to Plaintiff) with the Register of Copyrights on January 26, 2017 and was assigned Registration No. VA 2-046-824. *Id.*  A copy of the Certificate of Registration pertaining to the Work is attached to the Complaint as Exhibit A. *Id*. at 4.

Defendant is a Caribbean style chicken wing restaurant with two locations in South Florida and one in New Jersey. *Id.* Defendant advertises/markets its business primarily through its commercial website, social media, and other forms of advertising. *Id.* In February 2020 (after Plaintiff's above-referenced copyright registration of the Work), Defendant published the Work on its Facebook page. *Id.* A copy of screenshots of Defendant's Facebook displaying the copyrighted Work, are attached to the Complaint as Exhibit B. *Id.* at 5. Defendant was never licensed to use or display the Work. *Id.* Defendant never contacted Plaintiff to seek permission to use the Work in connection with its website/advertising or for any other purpose – even though the Work that was copied is clearly professional stock photography that would put Defendant on notice that the Work was not intended for public use. *Id.* Defendant used the Work for commercial use – namely, in connection with the marketing of its business. *Id.* Upon information and belief, Defendant located a copy of the Work on the internet and, rather than contact Plaintiff to secure a license, simply copied the Work for its own commercial use. *Id.*

Plaintiff's primary business is the creation of new photo/video content and licensing such content to supermarkets, ad agencies, and other entities. *Id.* To ensure Plaintiff's valuable intellectual property is not being misappropriated (which necessarily lowers the value thereof), Plaintiff employs a full-time paralegal and other staff that each (when time permits) perform reverse-image searches using Google Images and review grocery store electronic/print ads to determine whether Plaintiff's images are being misused. *Id.* at 6. Plaintiff's staff generally searches using a rotating sub-set of photographs that may be illegally/improperly published by non-licensees. *Id.* Given the volume of Plaintiff's library, Plaintiff was reasonably unable to discover Defendant's improper use of the Work at issue in this lawsuit prior to the aforementioned date of discovery. *Id.*

Through its ongoing diligent efforts to identify unauthorized use of its photographs, Plaintiff first discovered Defendant's unauthorized use/display of the Work in October 2021. *Id.* Following Plaintiff's discovery of Defendant's infringement, Plaintiff sent at least one infringement notice to Defendant to notify it of the impermissible use. *Id.* Defendant ignored the notice(s) and did not otherwise respond to Plaintiff. *Id.* Ultimately, Plaintiff retained the undersigned counsel to pursue this matter. *Id.* Plaintiff (through counsel) sent via e-mail and Federal Express an infringement notice to Defendant to notify it of the impermissible use. *Id.* Undersigned counsel sent at least five subsequent e-mails to Defendant and attempted phone calls in an attempt to negotiate a reasonable license for the use of the Work, yet these communications went substantially unanswered.[1]

## ANALYSIS

### A.    *Applicable Legal Standards*

Federal Rule of Civil Procedure 55 sets forth two steps to obtain a default judgment. First, when a defendant fails to plead or otherwise defend a lawsuit, the clerk of court enters a clerk's default. Fed. R. Civ. P. 55(a). Second, after entry of the clerk's default, the Court may enter default judgment against the defendant so long as the defendant is not an infant or incompetent. Fed. R. Civ. P. 55(b)(2). "The effect of a default judgment is that the defendant admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by entry by the judgment and is barred from contesting on appeal the facts thus established." *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

The Court must review the sufficiency of the complaint before determining if a moving party is entitled to default judgment. *See U.S. v. Kahn*, 164 F. App'x 855, 858 (11th Cir. 2006)

---

[1] On one of the phone calls with Ms. Phillips, she attempted to blame a third-party, and ended the conversation at that. As such, Plaintiff was unable to negotiate a reasonable license. *Id.*

(citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206) (5th Cir. 1975); *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007)). "While a complaint . . . does not need detailed factual allegations," a plaintiff's obligation to show its entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If the admitted facts are enough to establish liability, the Court must then ascertain the appropriate amount of damages and enter final judgment in that amount. *See Nishimatsu*, 515 F.2d at 1206. An evidentiary hearing on damages is not required by Rule 55, and it is within the Court's discretion to choose whether to hold such a hearing. *See* Fed. R. Civ. P. 55(b)(2); *SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911–12 (11th Cir. 2011).

### B.   *Copyright Infringement*

The Copyright Act, 17 U.S.C. § 501(a), provides that "(a)nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 [17 U.S.C. §§ 106-122] or of the author as provided in section 106A(a) [17 U.S.C. § 106A(a)]... is an infringer of the copyright or right of the author, as the case may be." 17 U.S.C. § 501(a). "Copyright infringement has two elements: (1) ownership of a valid copyright, and (2) copying of protectable elements." *Home Design Servs., Inc. v. Turner Heritage Homes Inc.*, 825 F.3d 1314, 1320 (11th Cir. 2016).

With respect to the first element, a certificate of registration "constitute[s] prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). "Once a plaintiff produces a valid registration, the burden shifts to the defendant to establish that the work in which the copyright claimed is unprotectable." *Latimer v. Roaring Toyz,*

*Inc.*, 601 F.3d 1224, 1233 (11th Cir. 2010). Here, Plaintiff registered the Work pursuant to 17 U.S.C. § 411(a) with the Register of Copyrights on August 29, 2011 and was assigned Registration No. VAu 1-077-015. By virtue of its default, Defendants do not have any right to challenge Plaintiff's registration/ownership of a valid copyright.

The copying element of an infringement claim has two components. *Latimer*, 601 F.3d at 1232. First, a plaintiff must demonstrate that the defendants copied the plaintiff's work as a factual matter. *Id.* Second, the plaintiff must establish "substantial similarity" between the allegedly infringing work and the elements of the copyrighted work that are legally protected. *Id.* at 1233.

Here, the screenshots of Defendant's Facebook unequivocally show Defendant's copying of the Work. Defendant's default further constitutes an admission as to such copying. There is no factual or subjective issue of "substantial similarity" here as Defendant copied and published a duplicate image of the Work. Thus, Defendant undisputedly copied Plaintiff's copyrighted Work resulting in this Final Default Judgment being entered against Defendant on Count I of the Complaint.

### C.    *Willfulness*

Willful infringement occurs when the Defendant acts "with 'actual knowledge or reckless disregard for whether its conduct infringed upon the plaintiff's copyright.'" *Arista Recs., Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (citing *Original Appalachian Artworks, Inc. v. J.F. Reichert, Inc.*, 658 F. Supp. 458, 464 (E.D. Pa. 1987)). "Moreover, this Court may infer that Defendants willfully infringed Plaintiffs' copyrights because of Defendants' default." *Id.* at 1313 (citations omitted). When awarding increased damages in the context of Section 504(c)(2), "deterrence of future violations is a legitimate consideration" because "defendants must not be able to sneer in the face of copyright owners and

copyright laws." *Cable/Home Commc'n Corp. v. Network Prods.*, 902 F.2d 829, 851 (11th Cir. 1990) (internal quotation omitted).

Here, Plaintiff took the extra step of notifying Defendant of its infringement pre-lawsuit. Defendant ignored Plaintiff's attempts to communicate directly and subsequently ignored undersigned counsel's e-mails and phone calls. Defendant's refusal to pay a reasonable licensing fee and refusal to respond to multiple infringement notices demonstrates that Defendant had actual knowledge or acted with reckless disregard for the fact that its conduct infringed upon Plaintiff's exclusive copyrights in the Work. Further, despite all communication attempts, the Work still remains posted on Defendant's Facebook page. Mot. at 9. Defendant's refusal to remove Plaintiff's Work after nearly a dozen communication attempts demonstrates Defendant's willfulness.

Accordingly, Defendant's default and the well-pled facts of the Complaint, which are admitted by Defendant's default, establish that Defendant's infringement of the Work was willful and deliberate.

### D.   *Plaintiff's Damages*

#### 1.   **Actual Damages**

Pursuant to 17 U.S.C. § 504(b), a "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement." Actual damages are often "measured by the revenue that the plaintiff lost as a result of the infringement." *Montgomery v. Noga*, 168 F.3d 1282, 1295 n.19 (11th Cir. 1999). This loss includes "lost sales, lost opportunities to license, or diminution in the value of the copyright." *Thornton v. J Jargon Co.*, 580 F. Supp. 2d 1261, 1276 (M.D. Fla. 2008) (quoting *On Davis v. The Gap, Inc.*, 246 F.3d 152, 164 (2d Cir. 2001)). The copyright owner may also recover the fair market value of the licensing fee that would have been charged for the work that was infringed. *Lorentz v. Sunshine Health Prod., Inc.*, No. 09-61529,

2010 WL 11492992, at *5 (S.D. Fla. Sept. 7, 2010), *report and recommendation adopted*, No. 09-61529, 2010 WL 11493070 (S.D. Fla. Nov. 15, 2010).  To demonstrate entitlement to a reasonable license fee, the fair market value of an infringed work may be established by "evidence of benchmark licenses, that is, what licensors have paid for use of similar work."  *Thornton*, 580 F. Supp. 2d at 1261 (citing *Montgomery*, 168 F.3d at 1295 n.19 (11th Cir. 1999)).

As set forth above and in the declaration of Rebecca Jones (Plaintiff's Secretary), Plaintiff exclusively operates on a subscription basis whereby it provides access to its library at $999.00 per month with a minimum twelve (12) month contract commitment (i.e., a licensee must pay at least $11,988.00 for access to any of Plaintiff's photographs for anywhere from 1 day to 1 year).  Mot. at 10.  Plaintiff generally does not license individual photographs as doing so greatly diminishes the value of Plaintiff's subscription model.  *Id.*  Plaintiff offers semi-exclusivity to its licensees – Plaintiff knows exactly what ad agencies, grocery stores, etc. have access to its library and can assure its customers that a competitor down the street will not be using the same photograph(s) in its own weekly ads, circulars, internet marketing, etc.  *Id.*  Plaintiff's customers often spend tens (if not hundreds) of thousands of dollars publishing weekly ads and developing marketing campaigns to advertise their products/services.  *Id.*

Because Plaintiff markets its photographic library on the basis of its exclusivity, the copying and publishing of individual photographs by non-licensees greatly reduces the value of Plaintiff's library.  *Id.*  Plaintiff employs multiple full-time employees to locate and identify such nonauthorized uses in an effort to ensure exclusivity to Plaintiff's licensees.  *Id.*  Plaintiff incurs these expenses (payroll etc.) to protect the integrity of its library.  *Id.*

Plaintiff's library of photographs was created over a 15–20 year period of time (with new creative works being made through the present date).  *Id.*  Plaintiff has employed professional staff

photographers and likewise utilizes other professional photographers (on a work-for-hire basis), all of which specialize in high-end product/food photography. *Id.* All of these photographers are provided specific instructions with respect to Plaintiff's vision/overall composition requirements – namely, that food/product photography should result in images/meals accessible to the general public that an average family could prepare for a meal. *Id.* For any image (including the one at issue in this lawsuit), Plaintiff's photographers spend hours using specialized lighting/equipment and take dozens (if not hundreds) of images before identifying 1–2 for inclusion in Plaintiff's library. *Id* at 10–11. For any given photograph, Plaintiff then has costs associated with post-processing the image in specialized editing software such as Adobe Photoshop, Adobe Lightroom, and/or other programs so that the desired end-look of the photograph can be achieved, for their proper use in print and digital media advertising. *Id.* at 11.

When Plaintiff's staff discovers an existing (i.e., published and available for viewing on the internet) infringement of one of its photographs, Plaintiff creates an infringement notice on the date of discovery or within 1–2 days thereafter. *Id.* The infringement notice identifies the date of discovery, displays the subject photograph, and displays a screenshot of the infringer's alleged use together with a Facebook URL (if available) where the infringement is located. *Id.* A true and correct copy of Plaintiff's infringement notices with respect to the Work at issue in this lawsuit are attached to the Motion in the Jones Declaration. *Id.*

The earlier-posted Facebook page is dated February 6, 2020, which shows that the Work was published by Defendant at least as of February 2020. *Id.* Defendant's failure to participate in this lawsuit has limited Plaintiff's ability to conduct discovery to fully discover the extent of its infringement and/or the exact date on which the Work was uploaded and/or removed from Defendant's Facebook. *Id.* This significantly hinders Plaintiff's ability to determine its damages

because, for each year that Defendant published the Work, Plaintiff would be owed an annual

license fee of $11,988.00.  *Id.*  Here, it is only known that the Work was published as of February

2020 (the date of the Facebook post).  As Plaintiff does not pro-rate its license, Defendant would

be in its third year of usage (e.g., Feb. 2020-Feb. 2021; Feb. 2021-Feb. 2022; Feb. 2022-Present).

*Id.*  Given these facts, Plaintiff proffers that the cost for the contractual minimum 1-year license

($11,988.00), multiplied by the three years of use, is the most accurate measure of Plaintiff's actual

damages based on presently-known facts.  *Id.* at 11–12.

In *Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. v.
Patriot Fine Foods LLC*, the $11,988.00 license was found to be a useful tool to properly calculate

Plaintiff's damages:

> Here, Plaintiff provides access to its library at a price $999.00 per
> month with a minimum twelve-month contract commitment,
> meaning, a licensee must pay $11,988 for access to any of Plaintiff's
> photographs for any amount of time within a one-year period. (ECF
> No. 13, Ex. A. ¶¶ 4–5). Plaintiff has numerous clients who pay this
> annual subscription fee. (*Id.* ¶ 4). While that demonstrates that
> licensors have indeed licensed its library on an annual basis for
> $11,988, it is unclear whether any licensor has paid that amount to
> utilize a single photograph in the library. Nevertheless, I find
> $11,988 to be a useful proxy given the below-described difficulties
> in calculating with precision Plaintiff's actual damages.

*Prepared Foods Photos, Inc. v. Patriot Fine Foods LLC*, No. 21-82129, 2022 U.S. Dist. LEXIS

205649, at *10 (S.D. Fla. Mar. 22, 2022).  The same analysis was adopted by the court in *Prepared

Food Photos, Inc. v. 193 Corp.*, No. 1:22-cv-03832, 2022 U.S. Dist. LEXIS 205690 (N.D. Ill. Sep.

21, 2022) in which the court entered a default judgment for three (3) years of pre-registration use

of a single photograph in the amount of $35,964.00 ($11,988.00 x 3)*.  See also Prepared Food

Photos, Inc. v. Miami Beach 411 Corp.*, No. 22-23197, 2022 U.S. Dist. LEXIS 216003 (S.D. Fla.

Nov. 28, 2022) (awarding Plaintiff $35,964.00 in actual damages, representing the $11,988.00

annual license fee x 3 years of usage of a single photo); *Prepared Food Photos, Inc. v. Fat Daddy Co.*, No. 22-61671, 2022 U.S. Dist. LEXIS 216004 (S.D. Fla. Nov. 29, 2022) (awarding Plaintiff $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for a 1-year use with a 2x multiplier applied thereto).

Defendant's inaction and refusal to participate in this lawsuit suppressed the information necessary to fully calculate Plaintiff's actual damages. *Id.* at 12–13. Similarly, Defendant's refusal to cooperate in this lawsuit has prevented Plaintiff from discovering any profits received by Defendant that would be recoverable pursuant to 17 U.S.C. § 504(b) in addition to Plaintiff's actual losses. To establish Defendant's profits subject to disgorgement under § 504(b), a "copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to provide his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). Defendant solely controls all information concerning its gross revenue related to its infringing uses of the Work, and it has stymied Plaintiff's ability to present that evidence to the Court.

Given the above, Plaintiff believes that the fairest beginning measure of its actual damages, in this case, is the $11,988.00 annual cost for licensing any image from Plaintiff's library multiplied by the maximum years of use that copyright will permit, **$35,964.00** ($11,988.00 x 3). However, in view of the foregoing, actual damages are insufficient due to Defendant's refusal to appear and participate in discovery, and Plaintiff thus elects to seek an award of statutory damages for Defendant's willful infringement of Plaintiff's copyrighted Work.

### 2.     Statutory Damages for Copyright Infringement

Pursuant to 17 U.S.C. § 504(c), Plaintiff hereby elects to recover statutory damages for Defendant's infringement of Plaintiff's exclusive rights in the copyrighted Work, and

enhancement of its statutory award based upon the willfulness of such infringement.  Where (as here) willful infringement has occurred, courts in this Circuit will generally look to a plaintiff's actual damages and award 2x–3x to properly account for statutory damages.  *See, e.g., Corson v. Gregory Charles Interiors, LLC*, No. 9:19-cv-81445, 2020 U.S. Dist. LEXIS 142932, at \*5-7 (S.D. Fla. Aug. 7, 2020) (trebling the plaintiff's actual damages after applying a scarcity multiplier); *Buttnugget Publ'g v. Radio Lake Placid, Inc.*, 807 F. Supp. 2d 100, 110-11 (N.D.N.Y. 2011) ("[T]o put infringers on notice that it costs less to obey the copyright laws than to violate them, a statutory damage award should significantly exceed the amount of unpaid license fees.").

In cases of non-willful infringement, statutory damages may be awarded up to $30,000.00 resulting from the infringement of the copyrighted Work.  *See* 17 U.S.C. § 504(c)(1).  As discussed above, however, Defendant's conduct – as well as its decision not to defend against Plaintiff's claim – demonstrates that its conduct is willful:

> Had Plaintiff been able to conduct discovery and gather information on the scope of Defendant's infringement, actual damages would have likely been greater than the reasonable licensing fee for the Work. Here, doubling $11,988 will appropriately account for the circumstances surrounding this infringement and the need for deterrence.  Defendant's declination to participate in this litigation impeded the court's ability to calculate the total extent of Plaintiff's actual damages, including Defendant's profits.  Defendant likely profited to some degree from its unauthorized use; Plaintiff alleges that Defendant made commercial use of the Work for at least one year, advertising the sale of "USA Prime Angus London Broil" on its website for $9.99 per pound.  (ECF No. 1 ¶¶ 15, 17).  Further, as described above, Defendant's conduct was willful.  And "deterrence of future violations is a legitimate consideration" because "defendants must not be able to sneer in the face of copyright owners and copyright laws."  *Cable/Home Commc'n Corp.*, 902 F.3d at 851 (internal quotation omitted).  The need to deter future violations is an especially appropriate consideration here, given Defendant's default.

*Patriot Fine Foods LLC*, 2022 U.S. Dist. LEXIS 205649, at \*12–13.  The same facts in *Patriot Fine Foods* apply to this case.  Plaintiff was unable to conduct discovery or gather information.

Plaintiff's licensing structure is a strong proxy for calculating damages.  Similar to the approach taken in in *Patriot Fine Foods*, and given the circumstances of the instant case, Plaintiff submits that an award of statutory damages in the amount of **$71,928.00** ($35,964.00 x 2) under 17 U.S.C. § 504(c)(2) is appropriate to compensate Plaintiff for the damages suffered, to disincentivize infringers from intentionally hiding the profits of their infringing conduct in the hope they earn more than they can be held accountable for in actual damages, and to deter future violations of copyright law.

### E.    Costs and Attorneys' Fees

Pursuant to 17 U.S.C. § 505, "the court in its discretion may allow the recovery of full costs by or against any party… the court may also award a reasonable attorney's fee to pay the prevailing party as part of the costs."  Upon entry of a final judgment, Plaintiff is the prevailing party in this action.  In view of the willful nature of Defendant's infringement and its failure to defend or otherwise participate in this action, leading to unjustified delays and increased costs and fees, an award of full costs and attorney's fees to Plaintiff is appropriate.

17 U.S.C. § 1203(b)(5) likewise provides "the court…in its discretion may award reasonable attorney's fees to the prevailing party…," providing a second statute for an award of Plaintiff's full costs and attorney's fees.

The Court finds that an award of attorneys' fees and costs is appropriate here.  Defendant's willful conduct, failure to engage Plaintiff in an attempt to pay a reasonable licensing fee, and failure to participate in this lawsuit resulted in unnecessary fees and costs being incurred. The Court has reviewed the declaration of Plaintiff's counsel filed together with the Motion and finds such declaration to support the amount of fees and costs being sought.

The Court finds that the costs sought by the Motion ($461.40) are taxable against Defendant. Mot. at 16. These costs consist of the filing fee for this lawsuit and the service of process costs. *Id.*

Having concluded Plaintiff is entitled to attorneys' fees, the Court must now determine the reasonableness of Plaintiff's requested fee amount. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "This number is called the lodestar." *Ela v. Destefano*, 869 F.3d 1198, 1203 (11th Cir. 2017). "[T]here is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Id.* But "[u]ltimately, the computation of a fee award is necessarily an exercise of judgment, because there is no precise rule or formula for making these determinations." *Villano v. Cty of Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. 2001).

The Court has performed the lodestar analysis and finds that Plaintiff's counsel reasonably expended 7.90 hours (with 0.35 of those hours being expended by paralegals in Plaintiff's counsel's office and 5.10 hours being expended by a junior associate) in connection with pursuing this matter. The Court further finds that $450.00 is a reasonable hourly rate for Plaintiff's counsel (Daniel DeSouza), that $300.00 is a reasonable hourly rate for the junior associate attorney, and that $125.00 is a reasonable hourly rate for the paralegals.

Mr. DeSouza is a 2004 graduate of the George Washington University Law School who is admitted to both the Florida Bar and the New York Bar. He previously worked at Milbank, Tweed, Hadley & McCloy LLP and Becker & Poliakoff, PA before forming DeSouza Law, PA in 2014 and jointly forming CopyCat Legal PLLC in 2019. He is admitted to a multitude of federal courts throughout the country and has extensive experience litigating cases in both federal and state court.

In addition to Mr. DeSouza, a junior associate (Lauren Hausman) also billed time on this matter.  She is a 2021 graduate of Elon University School of Law.  She graduated third in her class with *magna cum laude* distinction, served on law review, and is in the Order of Barristers.  She is admitted to the Florida Bar and both the United States District Court for the Southern District of Florida and the United States District Court for the Middle District of Florida. The Court thus finds that $300.00 is a reasonable hourly rate for Ms. Hausman.

Given the above, the Court has calculated the lodestar amount to be $2,675.25.

**F.     *Permanent Injunction***

Pursuant to 17 U.S.C. § 502(a), "[a]ny court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502.  Injunctions are regularly issued pursuant to Section 502 because "the public interest is the interest in upholding copyright protections"; and courts also regularly issue injunctions as part of default judgments.  *Arista Records*, 298 F. Supp. 2d at 1314 (entering permanent injunction against defendants with respect to plaintiff's copyrighted work, including plaintiff's work to be created in the future).

Here, Defendant's conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiff, such that Plaintiff has no adequate remedy at law.  For example, the ability of Defendant to use Plaintiff's Work for its own commercial benefit without compensation to Plaintiff greatly impairs the market value of the Work, since others competing in that business or in related business areas, will not want to obtain a license to Plaintiff's work if it is already associated with a competing business; and potential licensees of Plaintiff will not want

to pay license fees to Plaintiff if they see other commercial enterprises taking and using Plaintiff's photographs for their own commercial purposes without paying any fee at all.

Accordingly, the Court will enter a permanent injunction against Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendant, prohibiting it from (a) directly or indirectly infringing Plaintiff's copyright or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any work derived or copied from Plaintiff's copyrighted photograph or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted photograph owned by Plaintiff.

## **CONCLUSION**

Based on the foregoing, judgment is hereby entered in favor of Plaintiff, Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. and against Defendant Perry Wings Plus, Inc. as follows:

1.     Plaintiff shall recover from Defendant the principal sum of **$75,065.65** for which let execution issue.  The foregoing sum consists of $71,928.00 (statutory damages for copyright infringement), $461.40 (costs), and $2,676.25 (attorneys' fees).

2.     Pursuant to Fed. R. Civ. P. 69(a) and Fla. R. Civ. P. 1.560, the judgment debtor, Perry Wings Plus, Inc., shall complete, under oath, a Florida Rule of Civil Procedure Form 1.977 (Fact Information Sheet), including all required attachments, and serve it on the judgment creditor's attorney, Daniel DeSouza Esq., CopyCat Legal PLLC, 3111 N. University Drive, Suite 301, Coral Springs, FL 33065, within **45 days** from the date of this Final Judgment, unless the Final Judgment is satisfied or post-judgment discovery is stayed.  Failure to complete the fact

information sheet shall be just cause for further sanctions. *See, e.g., Biggross, Inc. v. Matthews*, No. 8:02-CV-1216, 2007 WL 2827566, at *1 (M.D. Fla. Sept. 27, 2007) (awarding sanctions for a defendant's failure to fill out a fact information sheet).

      3.    Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendant are permanently enjoined from (a) directly or indirectly infringing Plaintiff's copyright or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any work derived or copied from Plaintiff's copyrighted photograph or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted photograph owned by Plaintiff.

      **DONE AND ORDERED** in Miami, Florida, this 19th day of December, 2022.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**